UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

In re:   Case No. 22-48480

JANDAVA DENISE CATTRON,   Chapter 13

          Debtor.   Judge Thomas J. Tucker
_____/

### OPINION REGARDING THE MOTION FOR RELIEF FROM STAY FILED BY COOPER COLESCOTT AND ALEXANDER COLESCOTT, CO-TRUSTEES

**I. Introduction**

This Chapter 13 case is before the Court on the motion filed by Cooper Colescott and Alexander Colescott, as Co-Trustees of the Robert H. Colescott Separate Property Trust Dated August 6, 1992 (the "Movants"), entitled "Motion for Relief from the Automatic Stay Pursuant to 11 U.S.C. § 362 to Continue Pending Probate Litigation in the Arizona Probate Court" (Docket # 29, the "Motion"). The Debtor filed an objection to the Motion, and a creditor, the Keystone Law Firm, filed a response concurring in the Debtor's objection to the Motion. The Court held a telephonic hearing on the Motion on December 21, 2022, and then took the Motion under advisement.

The Court has considered all relevant parts of the record of this bankruptcy case and of the pending adversary proceeding, Adv. No. 22-4304, all of the exhibits filed by the parties, and all of the oral and written arguments of the parties regarding the Motion. For the following reasons, the Court will grant the Motion in part and deny it in part.

**II. Background**

The Motion seeks relief from stay to permit the Movants to continue with their litigation against the Debtor that is pending in state court in Arizona. That case (the "Arizona Probate

Case") is pending in the Pima County Superior Court in Arizona, and is captioned *In the Matter of the Robert H. Colescott Separate Property Trust Dated August 6, 1992*, No. PB20190729. The Arizona Probate Case has been pending since June 10, 2019. Movants seek stay relief to permit them to continue prosecuting their claims against the Debtor in the Arizona Probate Case, to prosecute that case to judgment, and to enforce any judgment(s) the Movants obtain. The Movants' claims were filed on behalf of the trust known as the Robert H. Colescott Separate Property Trust Dated August 6, 1992 (the "Trust"), and arise from the Debtor's actions and omissions when she was the sole trustee of the Trust for roughly 10 years, until 2019. Movants' claims include allegations that the Debtor committed numerous breaches of fiduciary duty and numerous violations of Arizona law with respect to the Trust and the Trust's beneficiaries. The claims seek a judgment against the Debtor for millions of dollars plus other relief.

If permitted to proceed, the litigation in the Arizona Probate Case will determine not only whether the Debtor is liable to the Trust for damages and the amount of any such damages, but also what property rights the Debtor has and does not have in assets of the Trust, including certain paintings created by the Debtor's late husband, Robert H. Colescott.

By the time the Debtor filed this Chapter 13 case, on October 28, 2022, the Arizona Probate Case had been pending for three years and four months (since June 10, 2019). Discovery had been completed, the Arizona court had entered an order granting partial summary judgment for the Movants on August 31, 2022, and the case had been scheduled for a seven-day bench trial to begin on September 27, 2022. That bench trial was delayed, however, when the parties informed the Arizona court on September 14, 2022 that the case was settled. The Debtor then claimed that she had not authorized her attorney to agree to any settlement, and the Movants filed

2

a motion in the Arizona Probate Case seeking an order enforcing the settlement agreement that Movants claimed had been made. The Arizona court was scheduled to hold a hearing on that motion on November 1, 2022. But the Debtor filed her Chapter 13 case four days before that scheduled hearing, so the Arizona Probate Case was essentially put on hold, due to the automatic stay.

**III. Discussion**

As the United States Court of Appeals for the Sixth Circuit has held, "[t]he decision whether or not to lift the automatic stay resides within the sound discretion of the bankruptcy court." *In re Garzoni*, 35 F. App'x 179, 181 (6th Cir. 2002) (citations omitted). In the context presented by the Motion in this case, the Court considers the following factors in deciding whether there is "cause" to lift the stay under 11 U.S.C. § 362(d)(1): "1) judicial economy; 2) trial readiness; 3) the resolution of preliminary bankruptcy issues; 4) the creditor's chance of success on the merits; and 5) the cost of defense or other potential burden to the bankruptcy estate and the impact of the litigation on other creditors." *Id.* (citation omitted).

The Court has considered all of these factors. The Court also has considered the factors that are relevant to a decision whether to abstain from deciding state law claims in favor of allowing an appropriate state court to do so, under the permissive abstention provision of 28 U.S.C. § 1334(c)(1). Permissive abstention is permitted under § 1334(c)(1) "in the interest of justice, or in the interest of comity with State courts or respect for State law." *See* 28 U.S.C. § 1334(c)(1). Strictly speaking, the question of abstention is not now before the Court, but the abstention factors are relevant here by analogy.

In a recent case, this Court discussed the non-exclusive list of factors for the Court to

consider in deciding whether to abstain under § 1334(c)(1):

> The decision to abstain or not is aided by an analysis of all relevant factors, including a non-exclusive list of thirteen (13) decisional criteria set forth . . . in *Nationwide Roofing & Sheet Metal, Inc. v. Cincinnati Ins. Co.* (*In re Nationwide Roofing & Sheet Metal, Inc.*), 130 B.R. 768 (Bankr.S.D.Ohio 1991). Specifically, the following factors were identified: 1) the effect or lack of effect on the efficient administration of the estate if a court abstains; 2) the extent to which state law issues predominate over bankruptcy issues; 3) the difficulty or unsettled nature of the applicable state law; 4) the presence of a related proceeding commenced in state court or other non-bankruptcy court; 5) the jurisdictional basis, if any, other than 28 U.S.C. § 1334; 6) the degree of relatedness or remoteness of the proceeding to the main bankruptcy case; 7) the substance rather than form of an asserted "core" proceeding; 8) the feasibility of severing state law claims from core bankruptcy matters to allow judgments to be entered in state court with enforcement left to the bankruptcy court; 9) the burden of this court's docket; 10) the likelihood that the commencement of the proceeding in bankruptcy court involves forum shopping by one of the parties; 11) the existence of a right to a jury trial; 12) the presence in the proceeding of nondebtor parties; and, 13) any unusual or other significant factors. *Nationwide*, 130 B.R. at 780 (citations omitted).
>
> This non-exclusive list does not require a mechanical application of each factor, but provides a starting point for a permissive abstention analysis.

*Palltronics, Inc. v. PALIoT Solutions, Inc.* (*In re Lightning Technologies, Inc.*), No. 22-4114, __ B.R. __, 2022 WL 17096265, at *18-19 (Bankr. E.D. Mich., Nov. 21, 2022) (quoting *Brothers v. Tremaine* (*In re Tremaine*), 188 B.R. 380, 384–85 (Bankr. S.D. Ohio 1995)).

Based on the several considerations discussed below, the Court finds that of the *Garzoni* stay relief factors listed above, factor nos. 1, 2, 3, and 5 strongly weigh in favor of stay relief, while factor no. 4 is neutral. The Court also finds that of the permissive abstention factors listed in the *Palltronics* case, quoted above, the following factors weigh in favor of granting stay relief:

4

factor nos. 1-5, 7-10, and 13, and of those factors, nos. 2, 4, 8, and 10 weigh very strongly in favor of stay relief. The other factors, nos. 6, 11, and 12, are neutral.

The Court concludes that "cause" exists under 11 U.S.C. § 362(d)(1) to grant relief from the automatic stay, to the extent of the following relief. The Court will modify the automatic stay to permit the Arizona Probate Case to continue to final judgment. But the Court will not, at this time, modify the automatic stay to permit any efforts to collect from the Debtor any monetary judgment, monetary sanction, or monetary award that may be entered against the Debtor in the Arizona Probate Case.

The Court finds that cause for stay relief is established by the following considerations.

First, the Debtor's filing of this Chapter 13 bankruptcy case was an obvious and blatant effort to forum shop, and this forum shopping should not be permitted to succeed. The Debtor obviously filed this bankruptcy case, and now opposes the Movants' request for stay relief, in order to try to avoid having the state court in the Arizona Probate Case (the "Arizona Probate Court") make any further decisions on the merits of the claims against the Debtor in the Arizona Probate Case, or to make any decision on the Movants' motion to enforce the alleged settlement agreement. Instead, the Debtor wants this Court and the undersigned judge to decide the merits of these matters, hoping for a better result than the Debtor has gotten and fears getting in Arizona.

Such forum shopping is particularly inappropriate under the circumstances in this case. At the time the Debtor filed this bankruptcy case, the Arizona Probate Case has been pending for three years and four months, since June 10, 2019. The Debtor was represented in that case by several attorneys, and had actively litigated the case. All discovery had been concluded. The

5

Arizona Probate Court recently granted partial summary judgment against the Debtor and in favor of the Movants, on August 31, 2022. In that ruling the Arizona court rejected several of the Debtor's defenses as a matter of law, and ruled that the Debtor had violated numerous fiduciary duties and numerous Arizona statutes during her tenure as the sole trustee of the Trust. The Arizona court also ruled that the Debtor had waived several defenses by failing to timely raise them.[1]

Another reason why the Debtor's attempted forum shopping is particularly inappropriate is that the Arizona Probate Court had scheduled a hearing for November 1, 2022 on the Movants' motion to enforce a settlement agreement. That alleged settlement agreement was negotiated and agreed to by the Debtor's lead Arizona counsel, purportedly on behalf of the Debtor, on the eve of trial. The alleged settlement agreement was stated in detailed e-mails between counsel, and a written agreement was drafted, but the Debtor then refused to sign it. The alleged settlement agreement was very detailed, and provided for a global settlement of all disputes between the Movants and the Debtor. In refusing to sign the settlement agreement, the Debtor denied that she had authorized her attorney to agree to any settlement on her behalf. But the substantial evidence filed by the Movants in this Court, in support of their Motion,[2] shows that there is at least a significant chance that the Arizona Probate Court would have enforced the settlement, if the November 1, 2022 hearing had gone forward. Instead, the Debtor filed this bankruptcy case four days before the November 1 hearing (on October 28, 2022), in an obvious effort to avoid the

---

[1] A copy of the Arizona Probate Court's partial summary judgment ruling, filed August 31, 2022, is Exhibit 6-E to the Motion (Docket # 29-6).

[2] *See* Exhibits 6-F and 6-G to the Motion (Docket ## 29-7, 29-8).

state court holding the hearing and ruling on Movants' motion to enforce the settlement.

It is obvious that the Debtor filed this bankruptcy case in order to try to obtain a different court and judge from the ones in the Arizona Probate Case, after the Arizona court had made very unfavorable partial rulings on the merits against the Debtor. This instance of forum shopping is impermissible, and should not be allowed to succeed.

A second consideration showing cause for stay relief here is that the claims at issue in the Arizona Probate Case involve the application of only Arizona law, including Arizona trust law and trust statutes, and the Arizona Probate Court is certainly much more expert about and familiar with such Arizona law than this Court is. The undersigned bankruptcy judge, who sits in the Eastern District of Michigan, has no familiarity or experience with the relevant Arizona law.

Third, the Arizona Probate Court is very familiar, and much more familiar than this Court, with the facts, issues, and parties involved in the dispute between the Movants and the Debtor. The Arizona court has had the Arizona Probate Case for three and one-half years now, and has made numerous rulings in the case, including a detailed written ruling granting partial summary judgment for the Movants. And the Arizona court had guided the case all the way up to the eve of trial.

Fourth, the Arizona Probate Case and the Arizona Probate Court is ready for a hearing and ruling on the Movants' motion to enforce the alleged settlement (the "Settlement Agreement"), and if that motion is denied, the Arizona Probate Case is fully ready for a bench trial on the merits of the Movants' claims against the Debtor.

Fifth, there is no particular reason to conclude that it would be any faster or more efficient to have the merits of the Arizona Probate Case claims decided by this Court, as part of the claims

7

22-48480-tjt    Doc 47    Filed 12/22/22    Entered 12/22/22 16:43:46    Page 7 of 10

objection process, as the Debtor argues. The Movants likely will file a proof of claim in this case, on or before the January 6, 2023 deadline for doing so, and if stay relief is denied, the Debtor likely would file an objection to the claim. This Court then most likely would eventually have to hold a lengthy trial on the merits of the Movants' claims. The Debtor is correct that such a claims objection process would be a core proceeding. *See, e.g.*, 28 U.S.C. § 157(b)(2)(B). But that does not require this Court to determine the merits of the dispute, particularly when the Arizona court is so well situated to do so, and to do so very soon if stay relief is granted.

Sixth, there is no particular reason to conclude that it will be any more expensive or difficult, going forward, for the Debtor to litigate the claims at issue in the Arizona Probate Court, rather than in this Court. The Debtor managed to have several non-bankruptcy attorneys representing her in the Arizona Probate Case over the course of the last three and one half years. The Debtor actively litigated in the Arizona Probate Court for more than three years. The Debtor only appears to have decided recently, in effect, to flee from that Arizona court to this Court, after the Arizona court made substantial unfavorable rulings against the Debtor on the merits. And it appears that the Debtor's most recent lead counsel in Arizona, Mark Andersen, is seeking to withdraw not because the Debtor has not paid him or because the Debtor cannot pay him, but rather because of a disagreement with the Debtor over whether Mr. Andersen had authority to negotiate a settlement on behalf of the Debtor. Even if Mr. Andersen is permitted to withdraw by the Arizona court, there is no particular reason to doubt that the Debtor can obtain new counsel, if necessary, to litigate for her in Arizona, just as the Debtor was able to obtain new counsel, in the form of her current bankruptcy counsel, to file this bankruptcy case, and to pay such new

8

counsel a retainer of $9,687.00.[3]

Seventh, the burden on this Court would be substantial if this Court, rather than the Arizona Probate Court, had to hold a trial and decide the merits of the claims in the Arizona Probate Case. While this Court is always willing to bear any necessary and appropriate burden in presiding over any case assigned to it, such a burden in this instance is neither necessary nor appropriate.

Finally, the Court will address an argument made by the creditor Keystone Law Firm ("Keystone"). Keystone is one of the law firms that has represented the Debtor in the Arizona Probate Case. Keystone argues that the Court should not grant relief from stay. Keystone argues that if stay relief is granted, and if the Arizona Probate Court finds that the Debtor did in fact agree to the Settlement Agreement and enforces it, such Settlement Agreement will be subject to avoidance by the Debtor in this bankruptcy case, as a preferential transfer under 11 U.S.C. § 547(b). Such an avoidance, says Keystone, could prejudice Keystone, for reasons argued by Keystone's counsel during the hearing. Thus, says Keystone, this Court's granting stay relief to the Movants could end up causing prejudice to Keystone.

The Court rejects Keystone's argument as a reason to deny stay relief. The Court concludes that any prejudice to Keystone from stay relief is only very speculative at this point, and the Debtor's ability to avoid the Settlement Agreement, if the Arizona court rules it enforceable, also is very speculative. The concerns expressed by Keystone do not weigh against granting stay relief.

---

[3] *See* "Statement of Attorney for Debtor(s) Pursuant to F.R.Bankr.P. 2016(b)" (Docket # 22 at pdf p. 53).

For all of the reasons stated above, the Court concludes that cause exists for the following stay relief.  The claims and disputes in the Arizona Probate Case should be decided on the merits by the Arizona Probate Court, rather than by this Court.  The Motion will be granted to modify the automatic stay to permit this result.  But the Court will not modify the automatic stay to permit the Movants to actually try to collect any money judgment against the Debtor that the Arizona court may render.  There is no cause shown for such relief at this time.

## IV.  Conclusion

For the reasons stated in this Opinion, the Court will enter an Order granting the Motion in part and denying it in part, as described above.

**Signed on December 22, 2022**      /s/ Thomas J. Tucker
                                                          **Thomas J. Tucker**
                                                          **United States Bankruptcy Judge**