UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

In re:                                              Case No. 22-48480

JANDAVA DENISE CATTRON,                             Chapter 13

            Debtor.                                 Judge Thomas J. Tucker
_____/

## OPINION REGARDING THE MOTION TO DISMISS THIS CASE FILED BY COOPER COLESCOTT AND ALEXANDER COLESCOTT, CO-TRUSTEES

### I. Introduction

This Chapter 13 case is before the Court on a creditor's motion seeking dismissal of the case. The motion was filed by Cooper Colescott and Alexander Colescott, as Co-Trustees of the Robert H. Colescott Separate Property Trust Dated August 6, 1992 (the "Movants"), and is entitled "Motion to Dismiss Chapter 13 Case" (Docket # 50, the "Motion"). A creditor, Legacy Loans LLC, filed a concurrence in the Motion (Docket # 71). The Debtor objected to the Motion (Docket # 63), and a creditor, Keystone Law Firm, filed a concurrence in the Debtor's objection, opposing the Motion (Docket # 68).

The Court held a telephonic hearing on the Motion on January 26, 2023, and at the conclusion of the hearing, took the Motion under advisement.

The Court has considered all relevant parts of the record in this bankruptcy case, and all of the oral and written arguments of the parties. For the following reasons, the Court will deny the Motion.

### II. Jurisdiction

This Court has subject matter jurisdiction over this bankruptcy case and this contested matter under 28 U.S.C. §§ 1334(b), 157(a) and 157(b)(1), and E.D. Mich. LR 83.50(a). This

matter is a core proceeding under 28 U.S.C. § 157(b)(2)(A) and (O).

In addition, this contested matter falls within the definition of a proceeding "arising under title 11" and of a proceeding "arising in" a case under title 11, within the meaning of 28 U.S.C. § 1334(b). Matters falling within either of these categories in § 1334(b) are deemed to be core proceedings. *See Allard v. Coenen* (*In re Trans-Industries, Inc.*), 419 B.R. 21, 27 (Bankr. E.D. Mich. 2009). This is a proceeding "arising under title 11" because it is "created or determined by a statutory provision of title 11," *see id.*, including Bankruptcy Code § 1307(c). And this is a proceeding "arising in" a case under title 11, because it is a proceeding that "by [its] very nature, could arise only in bankruptcy cases." *See id.*

## III. Discussion

The Movants seek the dismissal of this Chapter 13 case for "cause" under 11 U.S.C. § 1307(c), because, they say, the Debtor filed this bankruptcy case in bad faith. The Movants also seek monetary sanctions against the Debtor and her attorneys, for the Movants' attorney fees and costs incurred because of this bankruptcy case.

## A. Background

The Debtor filed this Chapter 13 case on October 28, 2022. After obtaining an extension of time to do so, the Debtor timely filed her proposed Chapter 13 plan, schedules, and other required documents, all on November 23, 2022. (Docket ## 22-24). No plan has been confirmed yet. A number of objections to confirmation were filed, and the Court held a confirmation hearing on January 26, 2023, after which the Court continued the confirmation hearing to June 29, 2023, with conditions.

Earlier, on November 29, 2022, the Movants filed a motion for relief from stay (Docket

2

# 29).  After holding a hearing, this Court filed a written opinion and order on December 22,

2022, granting the stay relief motion in part.  (Docket ## 47, 48).  The Court's opinion (Docket

# 47, the "Stay Relief Opinion")[1] described the pre-bankruptcy litigation between the Movants

and the Debtor that has been pending in state court in Arizona for several years:

> The Motion seeks relief from stay to permit the Movants to
> continue with their litigation against the Debtor that is pending in
> state court in Arizona.  That case (the "Arizona Probate Case") is
> pending in the Pima County Superior Court in Arizona, and is
> captioned *In the Matter of the Robert H. Colescott Separate
> Property Trust Dated August 6, 1992*, No. PB20190729.  The
> Arizona Probate Case has been pending since June 10, 2019.
> Movants seek stay relief to permit them to continue prosecuting
> their claims against the Debtor in the Arizona Probate Case, to
> prosecute that case to judgment, and to enforce any judgment(s) the
> Movants obtain.  The Movants' claims were filed on behalf of the
> trust known as the Robert H. Colescott Separate Property Trust
> Dated August 6, 1992 (the "Trust"), and arise from the Debtor's
> actions and omissions when she was the sole trustee of the Trust
> for roughly 10 years, until 2019.  Movants' claims include
> allegations that the Debtor committed numerous breaches of
> fiduciary duty and numerous violations of Arizona law with respect
> to the Trust and the Trust's beneficiaries.  The claims seek a
> judgment against the Debtor for millions of dollars plus other
> relief.
>
> If permitted to proceed, the litigation in the Arizona Probate Case
> will determine not only whether the Debtor is liable to the Trust for
> damages and the amount of any such damages, but also what
> property rights the Debtor has and does not have in assets of the
> Trust, including certain paintings created by the Debtor's late
> husband, Robert H. Colescott.
>
> By the time the Debtor filed this Chapter 13 case, on October 28,
> 2022, the Arizona Probate Case had been pending for three years
> and four months (since June 10, 2019).  Discovery had been
> completed, the Arizona court had entered an order granting partial
> summary judgment for the Movants on August 31, 2022, and the

---

[1] *In re Cattron*, 647 B.R. 186 (Bankr. E.D. Mich. 2022).

3

case had been scheduled for a seven-day bench trial to begin on September 27, 2022. That bench trial was delayed, however, when the parties informed the Arizona court on September 14, 2022 that the case was settled. The Debtor then claimed that she had not authorized her attorney to agree to any settlement, and the Movants filed a motion in the Arizona Probate Case seeking an order enforcing the settlement agreement that Movants claimed had been made. The Arizona court was scheduled to hold a hearing on that motion on November 1, 2022. But the Debtor filed her Chapter 13 case four days before that scheduled hearing, so the Arizona Probate Case was essentially put on hold, due to the automatic stay.

(Stay Relief Opinion, 647 B.R. at 187-88).

Based on a combination of several reasons stated in its Stay Relief Opinion, the Court found cause to grant stay relief, to the following extent:

For all of the reasons stated above, the Court concludes that cause exists for the following stay relief. The claims and disputes in the Arizona Probate Case should be decided on the merits by the Arizona Probate Court, rather than by this Court. The Motion will be granted to modify the automatic stay to permit this result. But the Court will not modify the automatic stay to permit the Movants to actually try to collect any money judgment against the Debtor that the Arizona court may render. There is no cause shown for such relief at this time.

(*Id.* at 192). In its separate stay-relief order, the Court specified the scope of stay relief it was granting, as follows:

IT IS FURTHER ORDERED that the automatic stay of 11 U.S.C. § 362(a) is modified to permit the Movants, the Debtor, the courts of Arizona, and any and all other parties in interest to continue and conclude the Arizona Probate Case for the purpose of determining, and entering one or more orders and/or one or more judgments regarding, (i) the enforceability of the Settlement Agreement, (ii) the Debtor's entitlement, if any, to assets of the Trust, (iii) the amount and nature of the Trust's claim(s) against the Debtor, including but not limited to any award of attorneys' fees and/or sanctions which the Arizona Probate Court determines is appropriate.

4

IT IS FURTHER ORDERED that the automatic stay is ***not*** modified to permit the Movants or any other person or entity to collect or attempt to collect any money judgment, monetary award, or monetary sanction that may be entered against the Debtor by the Arizona Probate Court. Any such modification of the automatic stay must be made, if at all, by a future order entered by this Court.

(Docket # 48 at 1-2) (footnote omitted) (emphasis in original).

One of the reasons why this Court found cause to grant stay relief, to allow the litigation to continue in the Arizona Probate Court, was that in the Court's view, the Debtor was guilty of impermissible forum shopping. The Debtor filed this bankruptcy case soon after the Arizona Probate Court had ruled against the Debtor on several issues, in a decision granting partial summary judgment for the Movants.[2] This Court found:

[T]he Debtor's filing of this Chapter 13 bankruptcy case was an obvious and blatant effort to forum shop, and this forum shopping should not be permitted to succeed. The Debtor obviously filed this bankruptcy case, and now opposes the Movants' request for stay relief, in order to try to avoid having the state court in the Arizona Probate Case (the "Arizona Probate Court") make any further decisions on the merits of the claims against the Debtor in the Arizona Probate Case, or to make any decision on the Movants' motion to enforce the alleged settlement agreement. Instead, the Debtor wants this Court and the undersigned judge to decide the merits of these matters, hoping for a better result than the Debtor has gotten and fears getting in Arizona.
. . . .

---

[2] As this Court noted,

The Arizona Probate Court recently granted partial summary judgment against the Debtor and in favor of the Movants, on August 31, 2022. In that ruling the Arizona court rejected several of the Debtor's defenses as a matter of law, and ruled that the Debtor had violated numerous fiduciary duties and numerous Arizona statutes during her tenure as the sole trustee of the Trust. The Arizona court also ruled that the Debtor had waived several defenses by failing to timely raise them.

(*Id.* at 190) (footnote omitted).

5

It is obvious that the Debtor filed this bankruptcy case in order to try to obtain a different court and judge from the ones in the Arizona Probate Case, after the Arizona court had made very unfavorable partial rulings on the merits against the Debtor. This instance of forum shopping is impermissible, and should not be allowed to succeed.
. . . .

The Debtor managed to have several non-bankruptcy attorneys representing her in the Arizona Probate Case over the course of the last three and one half years. The Debtor actively litigated in the Arizona Probate Court for more than three years. The Debtor only appears to have decided recently, in effect, to flee from that Arizona court to this Court, after the Arizona court made substantial unfavorable rulings against the Debtor on the merits.

(Stay Relief Opinion, 647 B.R. at 189-90, 191).

On December 27, 2022, only five days after this Court entered its December 22, 2022 order granting substantial stay relief in favor of the Movants, the Movants filed their current Motion, seeking dismissal of this case. The Motion is rather surprising, given its timing, and given the fact that the automatic stay in this bankruptcy case no longer delays or hinders the full litigation, to conclusion, of the Arizona Probate Case. It is not surprising, however, that the Movants cite this Court's findings about forum shopping as a major reason to find that the Debtor filed this bankruptcy case in bad faith.

**B. Standards applicable to the Motion**

"Under [11 U.S.C.] § 1307(c) . . . , the Court may dismiss a debtor's Chapter 13 bankruptcy case 'for cause.'" *In re Mehlhose*, 469 B.R. 694, 706 (Bankr. E.D. Mich. 2012). "The filing of a bankruptcy case in bad faith . . . is considered 'cause' to dismiss a case under § 1307(c)." *Id.* at 707 (citing *Alt v. United States* (*In re Alt*), 305 F.3d 413, 418–19 (6th Cir.2002) ("[T]here is abundant authority for the notion that a bankruptcy court has the power to

6

dismiss a Chapter 13 petition upon a finding that the debtor did not bring it in good faith.")).

In *Mehlhose*, this Court discussed the principles and factors that apply in determining whether a Chapter 13 debtor's petition was filed in bad faith. The Court reiterates what it held in *Mehlhose*:

> The Sixth Circuit has "announced standards for bankruptcy courts to follow in determining the debtor's good faith." *Alt*, 305 F.3d at 419 (italics omitted). A determination of "good faith is a fact-specific and flexible determination" which "requires consideration of the totality of circumstances." *Copper v. Copper* (*In re Copper*), 426 F.3d 810, 815 (6th Cir. 2005)(citations omitted). "Under the totality of the circumstances test, [courts] analyze both the prior conduct of the bankruptcy petitioner and the petitioner's present circumstances." *Society Nat'l Bank v. Barrett* (*In re Barrett*), 964 F.2d 588, 590 (6th Cir. 1992).
>
> The *Alt* court also noted that "[i]n considering whether a petition has been brought in good faith, other circuits have recognized factors similar to those relevant in determining whether a plan has been proposed in good faith." *Alt,* 305 F.3d at 419. The Sixth Circuit listed twelve "circumstances to be considered in determining whether a plan has been proposed in good faith":
>
> > (1) the debtor's income;
> >
> > (2) the debtor's living expenses;
> >
> > (3) the debtor's attorney's fees;
> >
> > (4) the expected duration of the Chapter 13 plan;
> >
> > (5) the sincerity with which the debtor has petitioned for relief under Chapter 13;
> >
> > (6) the debtor's potential for future earning;
> >
> > (7) any special circumstances, such as unusually high medical expenses;
> >
> > (8) the frequency with which the debtor has sought

relief before in bankruptcy;

(9) the circumstances under which the debt was incurred;

(10) the amount of payment offered by debtor as indicative of the debtor's sincerity to repay the debt;

(11) the burden which administration would place on the trustee;

(12) the statutorily-mandated policy that bankruptcy provisions be construed liberally in favor of the debtor.

305 F.3d at 419 (citing *Society Nat'l Bank v. Barrett* (*In re Barrett*), 964 F.2d 588, 592 (6th Cir. 1992)).

In considering such a list of factors, however, the Court must keep in mind that:

no list is exhaustive of all the conceivable factors which could be relevant when analyzing a particular debtor's good faith. It would be impossible to provide such a list and we have not attempted to do so. We also stress that no one factor should be viewed as being a dispositive indication of the debtor's good faith. We agree with the Fifth Circuit that "[t]he 'totality of the circumstances' test means what it says: It exacts an examination of all the facts in order to determine the bona fides of the debtor."

*Hardin v. Caldwell* (*In re Caldwell*), 851 F.2d 852, 860 (6th Cir. 1988)(citing *In re Chaffin*, 816 F.2d 1070, 1074 (5th Cir. 1987).

*Mehlhose*, 469 B.R. at 707-08 (footnote omitted).

**C. The issues of whether the Debtor filed this bankruptcy case in bad faith, and if so, whether dismissal is the appropriate remedy**

The Movants rely heavily on this Court's earlier finding of impermissible forum shopping by the Debtor, in support of their contention that the Debtor filed this Chapter 13 case in bad

8

faith. And the Movants argue that the twelve *Alt* factors, discussed below, support their allegation of bad faith.

The Debtor's forum shopping is a factor that tends to weigh in favor of finding that the Debtor filed this bankruptcy case in bad faith. But this forum shopping factor, by itself, does not conclusively show that the case was filed in bad faith. And even if it did, this Court would have discretion to decide whether to dismiss this case based on such bad faith, or, in the alternative, to decide that some lesser remedy, such as the stay relief recently granted, is appropriate.

Bankruptcy Code § 1307(c) says that the Court "may" dismiss or convert a Chapter 13 case "for cause." It does not *require* the Court to dismiss or convert the case if it finds that "cause" exists. "Whether cause exists [under Bankruptcy Code § 1307(c)] and, if so, whether the chapter 13 case should be dismissed or converted to chapter 7, are issues within the discretion of the bankruptcy court." *In re Soppick*, 516 B.R. 733, 745 (Bankr. E.D. Pa. 2014) (citations omitted). In fact, the Bankruptcy Court has "considerable discretion in determining whether 'cause' exists and whether dismissal is the appropriate remedy." *Id.* (citations omitted) (quoting *In re Pierson*, No. 08-1015, 2009 WL 1424472, *2 (E.D. Pa. May 19, 2009)). *See also In re McDonald*, 118 F.3d 568, 569-70 (7th Cir. 1997) (dismissal under the for-cause ground stated in § 1307(c)(4) is discretionary); *In re Smith*, 85 B.R. 729, 730 (E.D. Va. 1988) (holding that "Congress intended dismissal under Section 1307(c) to be discretionary") (citations omitted).

In the Court's view, the problem of impermissible forum shopping by the Debtor has been appropriately remedied already, by the Court's December 22, 2022 stay relief order. Given that stay relief, dismissal of this bankruptcy case is not necessary to remedy the forum shopping problem. And given that stay relief, the Movants have not demonstrated any way in which they

are or will be prejudiced by the continuing pendency of this bankruptcy case.

The parties have argued about, and the Court has considered, the "totality of circumstances," and the factors identified in *Alt v. United States* (*In re Alt*), 305 F.3d 413, 419 (6th Cir. 2002). The Court finds that the Debtor did not file this bankruptcy case in bad faith, and that there is no "cause" under § 1307(c) to dismiss the case.

It seems clear that the Debtor filed this Chapter 13 bankruptcy case primarily to engage in forum shopping, as explained in more detail in the Court's Stay Relief Opinion. But the Court is persuaded that the Debtor's filing of this case also was motivated, at least to some extent, by a desire to address the Debtor's debts other than whatever debt(s) she may be found to owe to the Trust in the Arizona Probate Case. The Debtor has several other creditors, including some relatively large ones. Based on the proofs of claim filed in this case, it appears that the Debtor has debts owing to at least nine creditors other than the Movants, totaling $375,437.73.[3] (The Movants filed a proof of claim totaling $152 million, which includes $120 million in punitive damages, which the Debtor has been disputing in the Arizona Probate Case).[4] And the Debtor's current Chapter 13 plan proposes to pay all allowed claims, both secured and unsecured, in full, over the 60 month life of the plan.

When the Debtor filed her bankruptcy petition, and still now, there has been considerable uncertainty about what rights and assets the Debtor will end up having when the Arizona Probate Case is concluded, either by settlement or by judgment after trial. Similarly, there was and is considerable uncertainty about how much of a debt, if any, the Debtor actually will owe to the

---

[3] *See* Claim Nos. 1-1 through 11-1 in the Claims Register, excluding Claim No. 7-1.

[4] *See* Claim No. 7-1 in the Claims Register.

10

Trust when the Arizona Probate Case is concluded. The Debtor disputes that she owes any debt to the Trust. The Debtor's schedules and proposed plan, in effect, take the position that the Debtor owes nothing to the Movants or the Trust, and that they will have no secured or unsecured claim allowed in this case. For example, the Debtor lists a non-priority unsecured debt to the Movants in her Schedule E/F as unliquidated and disputed, and as "$0.00" in amount.[5]

The Trust could end up having an allowed claim in the millions of dollars against the Debtor, or it could end up with no allowed claim at all. The Debtor could end up with Trust-related assets worth millions of dollars, or with little or nothing from the Trust.

All of this substantial uncertainty has made it very difficult, if not impossible, for the Debtor to file bankruptcy schedules and a plan at this time that can be assured of accuracy.

In the Court's view, this uncertainty, rather than any bad faith by the Debtor, is what has caused many of the alleged inaccuracies and the alleged incompleteness in the Debtor's schedules, plan, and other filed papers, cited by the Movants. And in the Court's view, the alleged inaccuracies and incompleteness are not so serious as to demonstrate bad faith on the Debtor's part in the filing and prosecution of this bankruptcy case. And the alleged shortcomings in the Debtor's plan and schedules can be corrected quickly by the Debtor, with the help of her bankruptcy attorneys, and they are very likely to be corrected quickly, once the uncertainty about the outcome of the Arizona Probate Case ends.

It is possible that such uncertainty will end very soon. The Arizona Probate Court is scheduled to hold a hearing on February 13, 2023 on the Movants' motion to enforce the alleged Settlement Agreement. This Court cannot predict how the Arizona court will rule, but if that

---

[5] *See* Schedule E/F (Docket # 22 at pdf p. 25).

court grants the Movants' motion and enforces the alleged Settlement Agreement, the result will be this: all disputes between the Debtor and the Movants will be resolved; the Movants and the Trust no longer will have any claim against the Debtor; and the Debtor will end up with certain specific property with a value that is easily more than sufficient to enable (and require) the Debtor to pay all allowed claims in this Chapter 13 case in full.

If the Arizona court does not enforce the alleged Settlement Agreement, there is good reason to expect that the Arizona court will hold a bench trial in the near future, and then render a judgment resolving the disputes between the parties.

As the Debtor's counsel acknowledged in the hearing on the Motion, the Debtor will need to file amended schedules and an amended plan, after the Arizona Probate Case is concluded, and confirmation of a Chapter 13 plan will have to wait until the Arizona Probate Case is concluded. But that does not tend to show any bad faith by the Debtor, in either the filing or the prosecution of this Chapter 13 case to date.

As noted above, the Court has considered the totality of the circumstances, including the twelve *Alt* factors. The Court finds that of those twelve factors, factor nos. 1-4, 6-8, and 10-12 are either neutral or tend to show good faith on the Debtor's part in filing this bankruptcy case. Factor no. 9, "the circumstances under which the debt was incurred," as it relates to the Debtor's alleged debt to the Trust, would favor a finding of bad faith *if* the Trust's claims are found ultimately to have merit and to result in a substantial monetary liability to the Trust. But those matters are yet to be finally and fully determined by the Arizona court in the Arizona Probate Case. So this Court cannot find, at this time, that Factor no. 9 tends to show bad faith by the Debtor in filing this bankruptcy case.

12

*Alt* factor no. 5, "the sincerity with which the debtor has petitioned for relief under Chapter 13," is a mixed factor in this case, and on balance may tend to show bad faith by the Debtor, due to the Debtor's forum shopping motive, as described above. But the Court finds that even though the Debtor was motivated to a substantial degree by forum shopping in filing this bankruptcy case, the Debtor *also* filed this case for a good faith purpose — a purpose "that is consistent with the underlying purpose and spirit of [C]hapter 13," namely "financial 'rehabilitation through repayment of debt[.]'" *See Condon v. Brady* (*In re Condon*), 358 B.R. 317, 326 (B.A.P. 6th Cir. 2007) (citation omitted).

In the Court's view, consideration of the twelve *Alt* factors, on balance, does *not* show that the Debtor filed this bankruptcy case in bad faith. And the Court is very mindful of *Alt* factor no. 12, "the statutorily-mandated policy that bankruptcy provisions be construed liberally in favor of the debtor." This includes § 1307(c).

For the foregoing reasons, the Court finds that the Debtor's filing of this Chapter 13 bankruptcy case was not done in bad faith, and that there is no "cause" to dismiss this case under Bankruptcy Code § 1307(c). Nor is there any valid basis to grant the Movant's request for an award of any monetary sanctions, such as attorney fees and costs.

## IV. Conclusion

For the reasons stated above, the Court declines to dismiss this case or award sanctions, and will enter an order denying the Motion in its entirety.

Signed on January 31, 2023



/s/ Thomas J. Tucker
**Thomas J. Tucker**
**United States Bankruptcy Judge**