UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

In re:                                              Case No. 22-48480

JANDAVA DENISE CATTRON,                             Chapter 13

        Debtor.                                Judge Thomas J. Tucker
_____/

**OPINION REGARDING THE DEBTOR'S "MOTION TO DETERMINE SCOPE AND EFFECT OF AUTOMATIC STAY"**

**I. Introduction**

This Chapter 13 case is before the Court on the motion filed by the Debtor, Jandava Denise Cattron, entitled "Motion to Determine Scope and Effect of Automatic Stay" (Docket # 89, the "Motion"). A timely response objecting to the Motion was filed by Cooper Colescott and Alexander Colescott, as Co-Trustees of the Robert H. Colescott Separate Property Trust Dated August 6, 1992 (the "Trust") (Docket # 94). A creditor, the Keystone Law Firm, filed a response concurring in the Motion (Docket # 99). The Motion currently is scheduled for a hearing to be held on May 25, 2023 at 11:00 a.m.

The Court now concludes that a hearing on the Motion is not necessary, and that the Motion should be denied, subject to the terms described below. This is so for the reasons stated in this Opinion.

**II. Background**

The Debtor filed this Chapter 13 case on October 28, 2022. On December 22, 2022, the Court entered an Order entitled "Order Granting in Part, and Denying in Part, the Motion for Relief from Stay Filed by Cooper Colescott and Alexander Colescott, Co-Trustees" (Docket # 48, the "Stay Relief Order"). The background and reasons for the Stay Relief Order are stated

in the Court's written opinion filed on December 22, 2022 (Docket # 47, the "Stay Relief Opinion"); *In re Cattron*, 647 B.R. 186 (Bankr. E.D. Mich. 2022), which the Court incorporates by reference into this Opinion.[1]

In the Stay Relief Opinion, the Court found cause to "modify the automatic stay to permit the Arizona Probate Case to continue to final judgment." *Cattron*, 647 B.R. at 189. The Stay Relief Order stated, in pertinent part:

> IT IS FURTHER ORDERED that the automatic stay of 11 U.S.C. § 362(a) is modified to permit the Movants, the Debtor, the courts of Arizona, and any and all other parties in interest to continue and conclude the Arizona Probate Case for the purpose of determining, and entering one or more orders and/or one or more judgments regarding, (i) the enforceability of the Settlement Agreement, (ii) the Debtor's entitlement, if any, to assets of the Trust, (iii) the amount and nature of the Trust's claim(s) against the Debtor, including but not limited to any award of attorneys' fees and/or sanctions which the Arizona Probate Court determines is appropriate.
>
> IT IS FURTHER ORDERED that the automatic stay is ***not*** modified to permit the Movants or any other person or entity to collect or attempt to collect any money judgment, monetary award, or monetary sanction that may be entered against the Debtor by the Arizona Probate Court. Any such modification of the automatic stay must be made, if at all, by a future order entered by this Court.
>
> IT IS FURTHER ORDERED that the 14-day stay of this Order as provided for in Fed. R. Bankr. P. 4001(a)(3) is waived; this Order will have immediate force and effect as soon as it is entered.[2]

After the Stay Relief Order was entered, the Arizona Probate Court held hearings,

---

[1] Except as otherwise defined in this Opinion, capitalized terms used in the Stay Relief Order and/or in this Opinion have the meanings ascribed to them in the Stay Relief Opinion.

[2] Stay Relief Order (Docket # 48) at 1-2 (bold emphasis in original) (footnote omitted).

including an evidentiary hearing, on the Trust's motion to enforce the Settlement Agreement. On April 6, 2023, the Arizona Probate Court entered an order (the "April 6, 2023 Order"),[3] granting the Trust's motion, finding the Settlement Agreement to be "a valid, enforceable Settlement," "approving the terms of the Settlement Agreement,"[4] and ordering relief consistent with the Settlement Agreement. One of the valid, enforceable, and approved terms of the Settlement Agreement is that it "shall be deemed entered into and effective as of 9/12/2022."[5] That date is also the date on which the Trust signed the Settlement Agreement, and predates the bankruptcy petition date of October 28, 2022 in this case.

In her Motion, the Debtor complains that certain parts of the April 6, 2023 Order violate the automatic stay under 11 U.S.C. §§ 362(a)(1) and 362(a)(3), and violate certain other provisions of the Bankruptcy Code.

The Court finds and concludes that because of this Court's Stay Relief Order, none of the actions of the Trust or the Arizona Probate Court complained of by the Debtor violated the automatic stay. Nor do they violate any other provision of the Bankruptcy Code, with one possible exception discussed below, which the Court will remedy.

## III. Discussion

### A. The Water Street Property in Tucson, Arizona

---

[3] A copy of the April 6, 2023 Order, with a copy of the Settlement Agreement that the Arizona Probate Court attached to the order as Exhibit A, appears in the record of this case as Exhibit C to the Trust's response to the Motion (Docket # 94-5).

[4] April 6, 2023 Order at 2, ¶ B.

[5] Ex. A to April 6, 2023 Order (the "Settlement Agreement") at 1, first paragraph (Docket # 94-5 at pdf p. 8).

The first part of the April 6, 2023 Order that the Debtor complains of is the provision requiring the Debtor to execute and deliver to the Trust a quitclaim deed for the real property located at 4812 Water Street, Tucson, Arizona (the "Water Street Property"), "free of the Deed of Trust and Assignment of Rents for the benefit of Keystone Law[.]"[6] The order provides that if the Debtor does not deliver such a quitclaim deed within 10 days, the court will enter a judgment "vesting" title to the property in the Trust, "free and clear of any and all liens, claims or encumbrances after 1992."[7]

These parts of the April 6, 2023 Order are merely part of the relief to implement the Settlement Agreement, which required, among other things, that the Debtor "will transfer the Water Street Property to the [T]rust by quitclaim deed, free of the Keystone Law Firm lien, to be signed on the same date as the Settlement Agreement."[8] As such, these provisions do not violate the automatic stay. Rather, they were covered by the broad relief from stay in this Court's Stay Relief Order. The following language in the Stay Relief Order, quoted above, permitted these provisions in the April 6, 2023 Order:

> IT IS FURTHER ORDERED that the automatic stay of 11 U.S.C. § 362(a) is modified to permit the Movants, the Debtor, the courts of Arizona, and any and all other parties in interest **to continue and conclude the Arizona Probate Case** for the purpose of determining, and entering one or more orders and/or one or more judgments **regarding**, (i) **the enforceability of the Settlement**

---

[6] April 6, 2023 Order at 3, ¶ D.

[7] *Id.* at 3, ¶ E.

[8] Ex. A to April 6, 2023 Order (the "Settlement Agreement") at 3 ¶ 4.8 (Docket # 94-5 at pdf p. 10).

**Agreement**, . . .[9]

The provisions constitute part of an order "regarding" the "enforceability of the Settlement Agreement," and they are part of "continu[ing] and "conclud[ing] the Arizona Probate Case," within the meaning of the Stay Relief Order. So these provisions do not violate the automatic stay.

In the alternative, even if the Stay Relief Order could be interpreted not to grant stay relief to permit these provisions in the April 6, 2023 Order, this Court finds that cause exists to annul the automatic stay under 11 U.S.C. § 362(d)(1), effective as of the date of the Stay Relief Order, to permit these provisions. This is clearly consistent with this Court's intention in entering the Stay Relief Order, as shown by the language in that Order, discussed above. And the Court's intention is shown by the Stay Relief Opinion, in which the Court found cause to "modify the automatic stay to permit the Arizona Probate Case to continue to final judgment." *Cattron*, 647 B.R. at 189.

Furthermore, these provisions in the April 6, 2023 Order, regarding the Water Street Property, are not covered by this Court's exception to stay relief in the Stay Relief Order. That exception is limited to the ***collection*** of any monetary judgment or award against the Debtor. That exception is contained in the following part of the Stay Relief Order, quoted above:

> IT IS FURTHER ORDERED that the automatic stay is ***not*** modified to permit the Movants or any other person or entity to collect or attempt to collect any money judgment, monetary award, or monetary sanction that may be entered against the Debtor by the Arizona Probate Court.[10]

---

[9] Stay Relief Order (emphasis added).

[10] Stay Relief Order (bold emphasis in original).

There is nothing in the April 6, 2023 Order that can be construed as collection, or an attempt to collect, on any money judgment, monetary award, or monetary sanction entered against the Debtor.[11]

The Debtor also argues that the Water Street Property provisions in the April 6, 2023 Order "would require Debtor to violate [11 U.S.C. §] 363 which prohibits transfers of property of the estate without Bankruptcy Court authorization."[12] The Debtor cites no authority for this argument, except her general reference to § 363, just quoted. The Debtor overstates the meaning and effect of § 363.

The first problem with the Debtor's argument is that § 363(b)(1) merely authorizes and limits *a bankruptcy debtor's (or a trustee's)* authority to use, sell, or lease property of the bankruptcy estate, outside the ordinary course of business. If the Debtor believes that she is prohibited by § 363(b)(1) from executing and delivering the quitclaim deed to the Water Street Property to the Trust, as required by the April 6, 2023 Order, then the Debtor can simply not execute and deliver the quitclaim deed. The result of that will be that the Arizona Probate Court, rather than the Debtor, will take the necessary action to transfer title to the Water Street Property to the Trust, by entering a judgment vesting title in the Trust. By its terms, Bankruptcy Code § 363 does not apply to any such action that *the Arizona Probate Court* might take.

There are further flaws in the Debtor's § 363 argument. If and to the extent that the

---

[11] The Debtor is incorrect in stating, in the Motion, that "[t]he [Stay Relief Order] prohibits efforts to collect on **or enforce any obligation** without Bankruptcy Court authorization." (Mot. at pdf p. 3, ¶ 5.a) (emphasis added). That statement greatly overstates the scope of the Stay Relief Order's exception, quoted above.

[12] *Id.* at pdf p. 3, ¶ 5.b.

6

Debtor's interest, if any, in the Water Street Property is or ever was property of the bankruptcy estate in this case, that interest was subject to the pre-petition Settlement Agreement that the Arizona Probate Court has found to be valid and enforceable. And that means that the interest of the Debtor, and therefore the bankruptcy estate, if any, in the Water Street Property, was and is subject to *the Trust's interest* in that same property, under the valid and enforceable pre-petition Settlement Agreement.

Viewed in that light, the April 6, 2023 Order's provisions regarding the Water Street Property are merely the means by which the Trust is to fully realize its valid ownership interest in the Water Street Property. In substance, that is not unlike the situation where a stay relief order allows a secured creditor to repossess or foreclose on its collateral, even though the collateral also is property of a bankruptcy estate. Stay relief orders like that are entered every day in bankruptcy court under 11 U.S.C. § 362(d), and § 363 does not prohibit that. Indeed, § 363(d)(2) prohibits a trustee (or in Chapter 13, a debtor) from using, selling, or leasing property of the bankruptcy estate "to the extent" it is "inconsistent with" any stay relief granted under § 362(d). *See* 11 U.S.C. § 363(d)(2).

This Court's Stay Relief Order granted stay relief to permit the Arizona Probate Case to "continue and complete," with the sole exception of the actual collection of any monetary judgment against the Debtor. Clearly implicit in that relief was authorization for the Arizona Probate Court to order any and all appropriate relief to implement and enforce the Settlement Agreement as the Arizona Probate Court saw fit, other than the actual collection of a money judgment against the Debtor. The April 6, 2023 Order's provisions regarding the Water Street Property are part of the permitted relief, and are implicitly authorized under § 363(b)(1), if and to

7

the extent that provision even applies.

In concurring in the Debtor's Motion, the Keystone Law Firm ("Keystone") argues that it has a lien in the Water Street Property to secure payment of legal fees owed by the Debtor, and that the Arizona Probate Court's April 6, 2023 Order deprives Keystone of its lien without due process.[13] As Keystone puts it, the Arizona Probate Court's order:

> ostensibly extinguished Keystone's property (lien) right without due process -- after denying a request by Keystone's Arizona [attorney] that he be given the opportunity to make a record, including a record regarding Keystone's property interest in the Water Street Property.[14]

This is not a valid argument that the Arizona Probate Court violated the automatic stay; and the Court has rejected such an automatic stay argument, for the reasons stated above. Rather, this is an argument that goes to the merits of the claims in the Arizona Probate Case, which Keystone can and should pursue in the Arizona courts, if anywhere. The validity and existence of Keystone's lien rights, and the issue of whether and to what extent Keystone is bound by the "free and clear" provisions of the Settlement Agreement and the April 6, 2023 Order, are matters of Arizona law, to be determined by the Arizona courts, including possibly the Arizona appellate courts. These are not matters for this bankruptcy court to determine, especially given the fact that the Debtor and the bankruptcy estate in this case no longer have any valid ownership interest in the Water Street Property.

**B. Removal of the Debtor's personal property from the Water Street Property**

The Debtor complains about the provision in the April 6, 2023 Order that states that "[a]ll

---

[13] The Debtor makes a similar argument in its Motion. (Mot. at pdf p. 4, ¶ 5(e)).

[14] "Concurrence of Keystone . . ." (Docket # 99) at pdf p. 1 ¶ 2.

tangible personal property must be removed from the Water Street Property within 60 days from the date of this Order, and any property remaining after that date will be considered abandoned, and the Trustees may dispose of all remaining tangible personal property at their discretion[.]"[15]

The Debtor argues that this exceeds the scope of the stay relief this Court granted in the Stay Relief Order, and that a deemed abandonment of the Debtor's, and therefore the bankruptcy estate's, personal property located at the Water Street Property, would violate Bankruptcy Code § 554.[16]

The Court disagrees that these provisions violate the automatic stay. As the Court explained above, the Court's Stay Relief Order broadly granted stay relief to permit the Arizona Probate Case "to continue and conclude," including for the Arizona Probate Court to "determin[e], and enter[] one or more orders and/or one or more judgments regarding" the "enforceability of the Settlement Agreement."[17] This Court interprets its stay relief to permit the Arizona Probate Court to implement and enforce the Settlement Agreement as the Arizona Probate Court sees fit, other than by ordering the actual collection of a money judgment against the Debtor. There is no violation of the automatic stay in the April 6, 2023 Order's provisions regarding the Debtor's personal property located at the Water Street Property. Under the Settlement Agreement, the Trust is to be the sole owner of the Water Street Property, so it makes sense that the Arizona Probate Court would require the Debtor to remove her personal property

---

[15] April 6, 2023 Order at 3, ¶ F.

[16] *See* Mot. at pdf p. 5, ¶ 5(f). The Debtor also argues, without explanation, that this would violate Bankruptcy Code § 364. *Id.* It would not. Section 364 concerns a trustee (or in Chapter 13, a debtor) being authorized to obtain credit. *See* 11 U.S.C. § 364. That is not involved here.

[17] Stay Relief Order.

9

from that real estate, and to give the Debtor a reasonable time (60 days) to do so. Neither the Debtor nor the bankruptcy estate have any right to leave their personal property on real property they do not own, against the wishes of the real property owner. And implementation and enforcement of the Settlement Agreement logically must provide a remedy if the Debtor's personal property is not removed by the stated deadline. It is within the scope of this Court's Stay Relief Order for the Arizona Probate Court to provide such a remedy, as is the remedy that court chose (deemed abandonment of the personal property and disposal by the Trust).

In the alternative, even if the Stay Relief Order could be interpreted not to grant stay relief to permit these provisions in the April 6, 2023 Order, this Court finds that cause exists to annul the automatic stay under 11 U.S.C. § 362(d)(1), effective as of the date of the Stay Relief Order, to permit these provisions. This is clearly consistent with this Court's intention in entering the Stay Relief Order, as shown by the language in that Order and by the Court's Stay Relief Opinion.

The Court next will address the Debtor's argument about a possible violation of Bankruptcy Code § 554. That section concerns when the trustee (or in Chapter 13, the debtor) may abandon property of the bankruptcy estate, or may be ordered to do so. *See* 11 U.S.C. §§ 554(a), 554(b). And § 554(c) provides that "unless the court orders otherwise, any property" scheduled by the Debtor "not otherwise administered at the time of the closing of the case is abandoned to the debtor . . . ."[18] This Court has not yet "ordered otherwise" within the meaning

---

[18] Section 554 states:

> (a) After notice and a hearing, the trustee may abandon any property of the estate that is burdensome to the estate or that is of inconsequential value and benefit to the estate.

10

of § 554(c).

The Debtor's Motion says nothing about what personal property, if any, she has at the Water Street Property, or what the value of any of that personal property might be. And it remains to be seen whether and to what extent the Debtor actually will fail to timely remove the personal property from the Water Street Property. (The 60 day deadline to remove the personal property is June 5, 2023.)

Out of an abundance of caution, however, in ruling on the Motion, this Court will include in its order a requirement that the Trust must file a motion to seek, and obtain from this Court, an abandonment order under 11 U.S.C. § 554(b), and/or other further appropriate relief, before the Trust may dispose of any of the personal property of the Debtor or the bankruptcy estate that is located at the Water Street Property.

**C. The painting named "Alas, Jandava"**

Under the Settlement Agreement, the Debtor is entitled to "keep" the painting named "Alas, Jandava," and as a result, the April 6, 2023 Order states that the Debtor owns that

---

(b) On request of a party in interest and after notice and a hearing, the court may order the trustee to abandon any property of the estate that is burdensome to the estate or that is of inconsequential value and benefit to the estate.

(c) Unless the court orders otherwise, any property scheduled under section 521(a)(1) of this title not otherwise administered at the time of the closing of a case is abandoned to the debtor and administered for purposes of section 350 of this title.

(d) Unless the court orders otherwise, property of the estate that is not abandoned under this section and that is not administered in the case remains property of the estate.

11 U.S.C. § 554.

painting.[19] But the order says that this painting, which is currently in the possession of the Contemporary Arts Center of Cincinnati, may not be released

> unless and until the earlier of (i) the time for all appeals in this matter has passed without the filing of an appeal, or if an appeal is filed, the conclusion of any such appeal and entry of final judgment or order, or (ii) JANDAVA CATTRON waives her right to appeal entry of this Order, or (iii) JANDAVA CATTRON executes a statement, for filing with the Court, that she agrees to be bound by the terms of the Settlement Agreement and this Order; AND the Quitclaim Deed is recorded and JANDAVA CATTRON's tangible personal property is removed from the Water Street Property[.][20]

To the extent the Debtor argues that this provision violates the automatic stay, the Court disagrees. The Court's Stay Relief Order permitted this provision in the April 6, 2023 Order.[21] As with the other provisions discussed above, this provision was permitted as part of the Arizona Probate Court's implementation and enforcement of the Settlement Agreement. And it is because of the Settlement Agreement, and the Arizona Probate Court's enforcement of that agreement, that the Debtor owns this one painting. But that court's enforcement of this one provision of the Settlement Agreement, which favors the Debtor, was made conditional upon the enforcement of the other provisions of the Settlement Agreement, some of which favor the Trust.

The Debtor argues that as a party in possession of property of the bankruptcy estate, the Contemporary Arts Center of Cincinnati must turn over the painting Alas, Jandava to the Debtor,

---

[19] Settlement Agreement at 3 ¶ 4.4 (Docket # 94-5 at pdf p. 10); April 6, 2023 Order at 2-3, ¶ C.

[20] April 6, 2023 Order at 3-4, ¶ G.

[21] In the alternative, the Court finds cause to annul the automatic stay, as it does for the other provisions discussed above.

under Bankruptcy Code § 542.[22] The Debtor further argues that the Arizona Probate Court does not have authority or jurisdiction to excuse a party's compliance with § 542. The Debtor's argument fails, however, because under the April 6, 2023 Order, in effect, the painting at issue is only *conditionally* deemed property of the Debtor (and therefore of the bankruptcy estate). As the Arizona Probate Court has ruled, in effect, the conditions of such ownership are those stated in ¶ G of the April 6, 2023 Order, quoted above.[23] It follows that unless and until those conditions are met, the Alas, Jandava painting is not property of the bankruptcy estate, and there is no duty on the part of the Contemporary Arts Center of Cincinnati to release the painting under Bankruptcy Code § 542.

**D. The Debtor's liability for attorney fees and costs in an amount to be determined**

The April 6, 2023 Order states that the Debtor "shall pay attorneys' fees and costs incurred in connection with the enforcement of the Settlement Agreement to be determined upon the filing of an Application of Attorney's Fees and Costs."[24] The Debtor argues that this exceeds

---

[22] Section 542(a) states:

> Except as provided in subsection (c) or (d) of this section, an entity, other than a custodian, in possession, custody, or control, during the case, **of property that the trustee may use, sell, or lease under section 363 of this title, or that the debtor may exempt under section 522 of this title**, shall deliver to the trustee, and account for, such property or the value of such property, unless such property is of inconsequential value or benefit to the estate.

11 U.S.C. § 542(a) (emphasis added). Under § 363, the Debtor may only "use, sell, or lease" property that is "property of the estate." *See, e.g.* 11 U.S.C. § 363(b)(1). Under § 522, the Debtor may only exempt property "from property of the estate," *i.e.*, property that otherwise would be property of the estate, but for the exemption. *See, e.g.*, 11 U.S.C. § 522(b)(1).

[23] *See supra* note 20 and accompanying text.

[24] April 6, 2023 Order at 4, ¶ H.

13

the scope of this Court's Stay Relief Order, because it is covered by the exception to the stay relief granted in the Stay Relief Order. The Court disagrees.

This provision is not covered by this Court's exception to stay relief in the Stay Relief Order. As discussed above, that exception is limited to the *collection* of any monetary judgment or award against the Debtor. This provision merely states that the Debtor is liable for attorney fees and costs. It does not establish the amount if such attorney fees and costs, and does not amount to any "money judgment, monetary award, or monetary sanction" against the Debtor, let alone an attempt to *collect* on any such money judgment, monetary award, or monetary sanction entered against the Debtor.

## IV. Conclusion

For the reasons stated above, the Court will enter an Order consistent with this Opinion.

**Signed on May 23, 2023**  /s/ Thomas J. Tucker

**Thomas J. Tucker**
**United States Bankruptcy Judge**